NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY ANDERSON,  :
: Civil Action No. 03-0054 (DMC)
Petitioner,  :
:
v.  : **OPINION**
:
Supt. GRACE ROGERS, et al.,  :
:
Respondents.  :

**APPEARANCES:**

Petitioner <u>pro se</u>
Gary Anderson
ADTC
No. 243943B
8 Production Way
Avenel, NJ 07001-1628

Counsel for Respondents
Joan E. Love
Ofc. of the Essex Co. Prosec.
Essex Co. Courts Building
Newark, NJ 07102

**CAVANAUGH**, District Judge

Petitioner Gary Anderson, a prisoner currently confined at the Adult Diagnostic and Treatment Center, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Superintendent Grade Rogers and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

## I.  BACKGROUND

A.  Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The relevant facts are as follows. W.M. was fifteen years old. She lived with her family and attended high school. She met defendant in downtown Newark and told him that she was fifteen. He said he was twenty-one when he was actually twenty-six years old. Defendant gave W.M. his beeper number. She called him about three days a week for one and one-half months.
>
> On April 12, 1994, W.M. beeped defendant. He responded and asked her to meet him at his cousin, Patricia Hill's, house. they watched television in the living room with some of Patricia's children, as well as defendant's cousin, Keisha. W.M. then followed defendant to the basement where they talked briefly. There was a cot in the basement near the washer and dryer. Defendant asked if he could perform oral sex on W.M., and she consented. She removed her clothes from the waist down when they reached the cot.
>
> Defendant inserted his tongue into W.M.'s vagina. He also inserted his finger into her vagina. He never exposed his penis. Later, W.M. dressed. While they were standing in the basement, W.M. saw Julissa Estrada, defendant's girlfriend, in the doorway. Julissa was upset with defendant and started screaming. Defendant went upstairs with her. W.M. took her book bag, coat and umbrella. Defendant gave her $10 for cab fare home.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

> When W.M. arrived at home she told her seventeen-year-old cousin, what had occurred. Later defendant called and apologized for Julissa's "showing up."
>
> W.M.'s mother, L.W., received a telephone call from defendant's girlfriend later that same day. Defense counsel successfully barred the admissibility of the content of that conversation through an <u>in limine</u> pretrial motion. Upon questioning W.M., L.W. learned about all the events of the day, including the sexual conduct. W.M. was afraid to tell her mother about defendant and explained why she did not immediately disclose defendant's actions to her mother. L.W. called the police. Defendant called W.M. on the phone and her mother interrupted the call, advising defendant that W.M. was fifteen years old and warning him not to call the house again. Defendant became nasty and threatened her. Defendant called the next morning and apologized for being disrespectful.
>
> Patricia Hill testified for the defense. She testified that W.M. represented her age as eighteen. She claimed W.M. never went into the basement of her house, and she never saw any physical contact between defendant and W.M. that day. She also said that there was no cot in the basement.

(Answer, Ex. Ra3.)

B.   <u>Procedural History</u>

Respondent was tried to a jury in the Superior Court of New Jersey, Law Division, Essex County, and was found guilty of second-degree sexual assault by cunnilingus, in violation of N.J.S.A. 2C:14-2c(5) (Count 1), second-degree sexual assault by vaginal penetration, in violation of N.J.S.A. 2C:14-2c(5) (Count 2), and third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4a (Count 4). Petitioner was sentenced as a persistent offender, under N.J.S.A. 2C:44-3a, to an aggregate term of twenty years imprisonment with a 10-year

period of parole ineligibility, to be served at the Adult Diagnostic and Treatment Center at Avenel.

Petitioner appealed his conviction and sentence. By Opinion filed March 31, 1997, the Superior Court of New Jersey, Appellate Division, affirmed. (Answer, Ex. Ra3.) On July 10, 1997, the Supreme Court of New Jersey issued an Order dismissing Petitioner's Notice of Petition for Certification, for lack of prosecution. (Answer, Ex. Ra9.)

On April 8, 1998, Petitioner filed a pro se petition for post-conviction relief. The trial court denied that petition on June 19, 2000. By Opinion filed June 13, 2002, the Appellate Division affirmed the denial of relief. (Answer, Ex. Ra6.) By Order filed October 17, 2002, the Supreme Court of New Jersey denied certification. (Answer, Ex. Ra8.)

On January 6, 2003, this Court received this Petition, which is dated December 30, 2002. Respondents have answered, and Petitioner has sent the Court a letter, received on August 6, 2004, asserting an additional claim in support of his Petition. This matter is now ready for determination.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an

4

>application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court

5

either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other

6

federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).]

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

Petitioner contends that trial counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel because he failed to investigate and call as witnesses Patricia Hill,[2] Julissa Estrada, and Petitioner, himself. In addition, Petitioner contends that his sentencing counsel failed to provide effective assistance because he failed to challenge the State's use of a fourth-degree offense as a basis for the extended term.

On direct appeal, Petitioner raised the claim that his counsel was ineffective for, among other things, failing to conduct an adequate investigation and failing to call Julissa Estrada to testify. The sentencing claim was raised as a direct challenge to the extended term, rather than being couched as an ineffective-assistance-of-counsel claim, in Petitioner's direct appeal and in his pro se petition for post-conviction relief.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of

---

[2] In fact, Patricia Hill did testify. Petitioner asserted in the state courts that his counsel did not adequately prepare Ms. Hill for her testimony, and this Court construes the Petition as asserting that same claim.

8

counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." <u>Id.</u> at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the

facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

On direct appeal, the Appellate Division correctly identified Strickland as the governing standard. The Appellate Division found that the only purported deficiency that had any specificity was the failure to call Petitioner's girlfriend as a witness.

> She was also the mother of two of his four children. Her bias would obviously be something for the jury to assess because of her personal relationship with defendant. More importantly, defendant's counsel was able to preclude the testimony of Julissa's conversation with W.M.'s mother following the basement sexual encounter. Had Julissa testified, the conversation that she had with the victim's mother, previously suppressed, would have been the subject of cross-examination. Even if she denied the conversation, the State would then have been able to put the victim's mother back on the stand to relate the content of that conversation. The very success that defense counsel achieved by precluding that testimony from coming into the trial, would have been negated. The obvious strategy decision in not calling her as a witness was in furtherance of defense counsel's success in barring the conversation between the victim's mother, L.W., and defendant's girlfriend.

Defendant has produced no evidence to substantiate his claim of insufficient preparation or conference time on the part of defense counsel or what would likely have been developed had there been additional conference or preparation time in this type of case where there were no witnesses to the actual crimes other than the participants. Nor has he pointed to any other witness's testimony, other than Julissa Estrada which we have already addressed, that would have changed the outcome of the case. The bald assertions concerning a lack of conference time between defendant and counsel, the alleged lack of preparation and the failure to call witnesses are without substance.

Furthermore, the record reveals that defense counsel vigorously represented defendant. ...

At sentencing, defendant was represented by different counsel who argued that defendant should not receive an extended term of imprisonment, presented numerous letters compiled from adults in the community requesting sentencing leniency and requested a merger of Count 4, endangering the welfare of a minor, with Counts 1 and 2, the sexual assault offenses. Defense counsel further persuaded the trial judge that the aggravating factor of age should not be double-counted as asserted by the State, and the court did not consider this as an aggravating factor in determining defendant's sentence. Contrary to defendant's contentions that he was denied effective representation, the record shows otherwise.

Defendant argues in Point III that he should not have been sentenced to an extended term and having been so sentenced, he should not have received a maximum period of parole ineligibility. The trial judge determined defendant's eligibility as a persistent offender in accordance with the criteria established in State v. Dunbar, 108 N.J. 80 (1987). The present offenses constituted defendant's fourth indictable conviction. Among his prior convictions, defendant had a prior conviction for sexual assault on an eleven year old and a separate conviction for endangering the welfare of a child. The trial judge considered the sentencing guidelines and properly applied them in sentencing defendant to a maximum sentence on an extended term with a maximum period of parole ineligibility. We find the sentence neither

11

unreasonable nor shocking to the judicial conscience. State v. Roth, 95 N.J. 334, 364-65 (1984).

(Answer, Ex. Ra3.)

On Petitioner's petition for post-conviction relief, the trial court found the sentencing claim procedurally barred, as having been addressed on direct appeal, but also addressed and denied the claim on the merits, noting that the statute permits prior fourth-degree crimes to be considered, but requires the crime <u>for which the defendant is being sentenced</u> to be either a first, second, or third degree crime. (Tr. May 12, 2000, at 27-30.) As there was no dispute that Petitioner was sentenced for a second-degree crime, the extended term was available.

Also on Petitioner's petition for post-conviction relief, the trial court rejected the argument that counsel was ineffective for recommending against Petitioner testifying.

> The defendant also contends that his attorney was ineffective because he recommended against the defendant testifying. On Page 7 of the rider to the petition for post-conviction relief the defendant states:
>
>> "counsel gave me ill advice to not take the stand after I told him that I did not have any sexual pen-- penetration of the complainant, but merely engaged in kissing and sexual contact."
>
> The claim is completely without merit. The defendant was on trial on charges of sexual assault. Had the defendant taken the stand and given these admissions he would have admitted half of his case away. He would have admitted that he was in -- that he had had contact, sexual contact, and kissed the victim. The -- this was contrary to the theory of his defense, that he had no contact with his victim, direct personal

12

> contact with his victim, and that there was no place in the basement where the alleged contact took place for him to have had the -- the sexual relationship.
>
> The -- the whole testimony of Patricia Hill was to the effect that th-- that there never was a meeting between the victim and the defendant in the basement of the residence of Ms. Hill, and that there was never a cot there where the alleged incident took place. None of that would have been advanced if the defendant had taken the stand and -- and made these admissions. So the argument is totally lacking in merit. And it had been rejected by the Appellate Division.

(Tr. May 12, 2000, at 36-37.)

The Appellate Division revisited the ineffective assistance claim on appeal of the denial of post-conviction relief.

> Defendant's ineffective assistance argument was rejected by this court on direct appeal. The argument fares no better on appeal from a denial of post-conviction relief. This court explained that defendant's girlfriend, Julissa Estrada, was not called because a conversation she had with the victim's mother through defense counsel's efforts was precluded from being introduced at trial. It was an obvious strategy decision not to call her "in furtherance of defense counsel's success in barring the conversation between the victim's mother L.W. and defendant's girlfriend." State v. Anderson, supra, No. A-6309-94T1, slip op. at 6.
>
> Defendant argues that Patricia Hill was not properly prepared for trial and defense counsel did not review her statements to the police with her. Hill's credibility, as pointed out by the PCR judge, was vulnerable for other reasons. She had memory loss and was biased. Defendant is unable to show what would have been developed which would have made any difference had there been additional trial preparation time when there were no witnesses to the actual crimes other than the participants.
>
> Likewise, defendant's cousin, Keisha and Hill's landlord would only have provided cumulative testimony. Keisha was subject to the same charge of bias that

13

> tainted Hill's testimony. The basement layout with the absence of a cot was already testified to by Hill. We fail to see how the trial outcome would have been different even were they to testify when neither of them were witnesses to the criminal acts themselves. State v. Fritz, 105 N.J. 42, 58 (1987).

(Answer, Ex. Ra6.)

Here, the conclusion of the state courts is neither contrary to nor an unreasonable application of Strickland. Petitioner is not entitled to relief on this claim.

In a letter to the Court after the Answer was filed, Petitioner first raised the claim that his sentence is barred by Blakely v. Washington, 124 S.Ct. 2531 (2004).[3] Petitioner neither sought nor received leave to amend his Petition to assert this new claim. Moreover, this claim does not appear to have been raised in the state courts. Because it would be a waste of judicial resources, however, to dismiss this claim to run its course through the state courts, this Court will exercise its

---

[3] In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely, the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 124 S.Ct. at 2536-37 (internal quotations omitted.) Most recently, in United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court applied the rule of Apprendi to the U.S. Sentencing Guidelines, holding that the Guidelines are not mandatory, but are merely advisory.

discretion to deny this meritless claim. See 28 U.S.C. § 2254(b)(2).

The Blakely decision is not retroactively applicable to cases on collateral review. See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in United States v. Booker, 125 S.Ct. 738 (2005), does not apply retroactively to cases on collateral review); Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005) (same); United States v. Swinton, 333 F.3d 481 (3d Cir. 2003) (holding that Apprendi v. New Jersey, 503 U.S. 466 (2000), does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review). See also United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005) (Blakely does not apply retroactively to cases on collateral review); United States v. Enigwe, 2005 WL 928536 (E.D. Pa. April 18, 2005) (same). Thus, Petitioner is not entitled to relief on this claim.

B.  Sufficiency of the Evidence

Petitioner contends that the evidence was not sufficient to convict him of the second degree crime of sexual penetration, because it established only sexual "touching."

A claim that the jury's verdict was against the weight of the evidence raises a due process concern. Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the

15

essential elements of the crime beyond a reasonable doubt" should the writ issue. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324, n.16. <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000).

The Appellate Division rejected Petitioner's claim that the verdict was against the weight of the evidence.

> Defendant argues in Point I that the State failed to meet its burden of proof and the judgment of conviction was against the weight of the evidence. Not so. If the jury believed the testimony of the victim, W.M., there was more than ample evidence to sustain the convictions. Defendant's argument amounts to no more than contending that Patricia Hill's testimony should have been believed over that of W.M. and her mother, L.W. Patricia Hill was not a disinterested witness. She was defendant's cousin and they were very close, almost like brother and sister. Her credibility was for the jury to assess. The fact that the jury may have found W.M. and her mother more credible does not mean that the verdict was against the weight of the evidence.

(Answer, Ex. Ra3.)

The applicable sexual assault statute reads as follows:

c. An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:

. . .

> (5) The victim is at least 13 but less than 16 years old and the actor is at least 4 years older than the victim.

N.J.S.A. 2C:14-2c. "Sexual penetration" is defined as "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina either by the actor or upon the actor's instruction. The depth of insertion shall not be relevant as to the question of commission of the crime." N.J.S.A. 2C:14-1c.

Here, the victim testified that Petitioner "Put, um, inserted his tongue into my vagina and his finger." (Tr. Sept. 27, 1994, at 39.)

There is no due process violation here. Petitioner is not entitled to relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

17

to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability will issue.

## V. CONCLUSION

For the reasons set forth above, the Petition must be denied. An appropriate order follows.

Dennis M. Cavanaugh
United States District Judge

Dated: 10/21/05